[Civ. No. 7472. Fourth Dist., Div. One. Feb. 25, 1966.]

MARK L. HARRIS, Plaintiff and Appellant, v. SPINALI
AUTO SALES, INC., Defendant and Respondent; VIN-
CENT Q. GALIER, Intervener and Respondent.

448

Harry V. Ashfield for Plaintiff and Appellant.

MacNulty & Hulden and Richard P. MacNulty for Defendant and Respondent and for Intervener and Respondent.

CONLEY, J.*—This appeal was taken by the plaintiff,

*Assigned by the Chairman of the Judicial Council.

Mark L. Harris, from a judgment holding, in effect, that his stipulation in open court with all of the other parties furnished the basis for the decision against him. Vincent Q. Galier, Mark L. Harris, and Salvatore Spinali had been interested in the operation of a used car business which bore the corporate name of Spinali Auto Sales, Inc. The plaintiff filed this action (numbered 233273 in the Superior Court of San Diego County) against the corporation, claiming monies due him from the company. A second suit (numbered 233749 in the superior court of that county) was brought by Salvatore Spinali against the corporation; he also claimed that sums were owed him by the company. Vincent Q. Galier, in turn, filed a complaint in intervention against both Harris and Spinali, and alleged certain rights on behalf of the corporation against the plaintiffs.

The two cases were consolidated for trial and the taking of evidence was commenced. But on the second day, while court was in session and all parties and their attorneys were present, the judge was informed that a settlement had been reached and that the litigants wished to dictate a stipulation into the record. This agreement which was the basis of the special defense which resulted in the judgment appealed from, is thus referred to in the record:

"THE COURT: All right, gentlemen. In the case of Mark L. Harris vs. Spinali Auto Sales, No. 233,273, have you arrived at a settlement or disposition of the case?

"MR. MAC NULTY: We have, your Honor, both cases.

"THE COURT: Also the case of Salvatore Spinali vs. Spinali Auto Sales, No. 233,749?

"MR. MAC NULTY: Yes, your Honor.

"MR. BRUNER: That is correct, your Honor.

"MR. MAC NULTY: We have reached an agreed settlement and I might state it as follows, subject to counsel's correction. The assets of the corporation, whether liquid or not will be divided between Mark L. Harris and Mr. Galier in the following percentages. Mr. Galier will receive seventy percent of the assets of the company and Mr. Harris will receive thirty percent of the assets of the company after the accounts payable and debts of the corporation have been paid. I might state in addition to the cash in the various banks, which counsel is familiar with, and which I am also, the cash held by the Sheriff of the County from the sale of automobiles, that there is a 1958 Cadillac in the possession of Mr. Galier, which will be con-

sidered part of the assets of the company. There are certain accounts receivable at the San Diego Credit Bureau and certain impounds and all of these matters are assets of the corporation and will be divided, the net amount will be divided between the parties, as I have stated, that is, between the two parties, Mr. Harris and Mr. Galier.

"Mr. Bruner: That is correct. The only item not mentioned that I know of offhand is some accounts receivable presently in the possession of the corporation.

"Mr. Mac Nulty: They are also assets of the corporation.

"The Court: All right. What is the disposition of the case in which Salvatore Spinali is plaintiff, is that to be dismissed?

"Mr. Bruner: It will be dismissed by both sides.

"Mr. Mac Nulty: Both sides. I might state further, in both cases each of the parties will bear their own costs.

"Mr. Bruner: Agreed.

"The Court: All right. In the case No. 233,749 on stipulation of the parties the complaint of the plaintiff is dismissed, is there a cross-complaint in intervention in that?

"Mr. Mac Nulty: Yes.

"The Court: The complaint in intervention is dismissed and are there any cross-complaints? I guess that is about it, isn't it?

"Mr. Mac Nulty: I believe that is it.

"The Court: All right. Each party to bear their own costs. Let me say this to Mr. Harris and to Mr. Galier. I think that you gentlemen have acted wisely and I would simply like to comment that I think you both have very able representation in this matter. This is the kind of case, gentlemen, that the best part of wisdom is to settle. If the Court had to determine the issues of this case he would probably have to invoke some rules of law which might be technical and somebody might suffer unduly by that procedure, so I think that you have done a very wise thing and I commend you both for having the wisdom to do it and I want you to know in my opinion you have been both very ably represented in this lawsuit.

"Mr. Mac Nulty: Thank you, Judge.

"Mr. Bruner: Thank you, your Honor. Shall we withdraw the exhibits, Mr. MacNulty?

"Mr. Mac Nulty: Yes.

"The Court: On stipulation, very well, gentlemen, you may each withdraw all offered exhibits."

All parties then believed that they had agreed to the entry

of a judgment, and, plaintiff, defendant and intervener submitted proposed forms of judgment; the form suggested by Mr. Galier was adopted by the court and judgment was entered accordingly. However, an appeal by Mr. Harris alone followed, and the judgment was reversed (*Harris* v. *Spinali Auto Sales, Inc.*, 202 Cal.App.2d 215 [20 Cal.Rptr. 586]) on the ground that there had not been a specific stipulation that a judgment be entered. Thereafter, Mr. Galier amended his answer in the superior court to set forth, as a special defense, the agreement for settlement entered into among the parties in open court, as above set forth, and, by stipulation, the case first proceeded to trial upon this special defense. The court thereupon reached the conclusion that, weighing the settlement so agreed upon, judgment should be ordered against Mark L. Harris and Salvatore Spinali and that Vincent Q. Galier and Spinali Auto Sales, Inc. should recover their costs.

The proceedings leading to the present judgment differ from the former record in that the trial court now considered what the parties contracted with respect to their rights through their stipulation and whether after such agreement they were entitled to rely upon claims other than those reached by their stipulation.

It is essential to refer briefly to the facts which occurred during the first trial and which are now incorporated or referred to in the reporter's transcript of the second trial. Negotiations for settlement of the diverse claims involved in the two cases consolidated for trial commenced at the beginning of their actions and continued until the settlement was reached. During the last noon recess at the first trial, all parties and their counsel discussed settlement. Various offers were submitted by each side; counteroffers were made, and the facts were considered and talked over by counsel and their clients. Mr. Harris and Mr. Spinali, as well as Mr. Galier, were present, and a discussion was had between Mr. Harris, Mr. Spinali, and the counsel who then represented them, Mr. William Bruner. One James Smathers, a certified public accountant who had been employed by Spinali Auto Sales, Inc., was also available at these negotiations; he had been asked by Mr. Galier and his attorney to assist the litigants in ascertaining facts which would disclose the financial records of the company and aid the parties toward arriving at a settlement. The books, admittedly, were in an unsatisfactory condition, and it was difficult, if not impossible, to derive a clear financial picture from them. Mr. Harris, however, was fully advised by his counsel as to the terms of the final settlement.

Thus, the state of affairs after protracted negotiations was, or should have been, relatively apparent to all of the parties, and they agreed, in open court, without qualification, to settlé the whole matter involving everyone and including a dismissal of the Spinali suit; Mr. Galier was to have 70 percent of the net assets and Mr. Harris 30 percent. The stipulation was dictated to the official reporter in open court in the presence of all parties and their attorneys; the clerk entered a reference to the proceeding in his minutes; no objection was made by any party or his attorney; Judge Mahedy testifie'd at the second trial that there was no question in his mind that all parties consented to the agreement.

■ As is said in 83 Corpus Juris Secundum, Stipulations, section 1, page 2: ''A stipulation is an agreement between counsel with respect to business before a court, and is not one of the usual pleadings, but is a proceeding in the cause and as such is under the supervision of the court, and has been compared to, and distinguished from, a contract.''

■ Stipulations are, of course, favored by the courts; and while no particular form of stipulation is required when made orally in open court, except that it be noted in the minutes, its terms must be 'definite and certain to render the proper basis for a judicial decision.

■ A stipulation is conclusive with respect to the matters covered by it, unless the court, for good cause shown, later permits its abandonment or withdrawal. ■ As is said in *Palmer* v. *City of Long Beach,* 33 Cal.2d 134, 141-142 [199 P.2d 952] : ''Unless the trial court, in its discretion, permits a party to withdraw from a stipulation (see 23 Cal.Jur., § 14, p. 829 ; 161 A.L.R. 1161, note; 60 C.J., § 98, p. 91; 9 Wigmore on Evidence (3d ed.), § 2590, p. 588), it is conclusive upon the parties, and the truth of the facts contained therein cannot be contradicted. (*Woodward* v. *Brown,* 119 Cal. 283, 295 [51 P. 2, 542, 63 Am.St.Rep. 108] ; *Haese* v. *Heitzeg,* 159 Cal. 569, 575 [114 P. 816] ; see 23 Cal.Jur., § 12, p. 826 ; 2 Jones, Commentaries on Evi'dence, § 257, p. 454.)'' (See also *Gonzales* v. *Pacific Greyhound Lines,* 34 Cal.2d 749 [214 P.2d 809] ; *Andrew* v. *Bankers & Shippers Ins. Co. of New York,* 125 Cal.App. 24 [13 P.2d 515].)

It is stated in 83 Corpus Juris Secundum, Stipulations, section 4 (2), page 6, that : ''Stipulations made in open court have been very generally regarded as just as obligatory as though reduced to writing and executed with every legal formality.'' And in 83 Corpus Juris Secundum, Stipulations, section 12, page 30, it is said : ''A stipulation, although it is not itself

evidence, is the equivalent of, and may be relied on as, proof, . . .'' (See also *Rubattino* v. *Industrial Acc. Com.*, 65 Cal.App.2d 288 [150 P.2d 538]; *Grand* v. *Griesinger*, 160 Cal. App.2d 397 [325 P.2d 475]; *LeVanseler* v. *LeVanseler*, 206 Cal.App.2d 611 [24 Cal.Rptr. 206].)

█ A stipulation, properly entered into, is binding at a second trial of the action. (*Gonzales* v. *Pacific Greyhound Lines, supra,* 34 Cal.2d 749; *Crenshaw* v. *Smith*, 74 Cal.App. 2d 255 [168 P.2d 752].)

█ Stipulations are conclusive as to all matters properly contained in them. (83 C.J.S., Stipulations, § 13, pp. 31-33; *Trozera* v. *McDonell*, 131 Cal.App. 473 [21 P.2d 706].)

█ Ordinarily, a party will not be permitted to contradict a stipulation, even though it may be opposed to otherwise provable fact, and even though the stipulation affects the statutory and constitutional rights of the parties. (83 C.J.S., Stipulations, § 13, p. 32; *Palmer* v. *City of Long Beach, supra,* 33 Cal.2d 134.)

The appellant seeks to reverse the judgment based on an alleged unilateral mistake on his part in consenting to the stipulation, and on the ground that there was no proof that the appellant's attorney had authority to enter into the stipulation.

Much of the confusion in connection with the appeal arises because appellant's counsel does not seem to have a clear consciousness that, while the word ''contract'' is frequently referred to, this case in fact deals with a stipulation.

█ The rights growing out of a stipulation are similar to those arising from a contract, and the word ''contract'' is often employed loosely to denominate the rights created by a stipulation. However, when a stipulation is accepted by the court, as it was in this case, there is an additional party or element involved, namely, the court. And it becomes necessary, if contrary evidence is to be admitted or considered, for the trial judge to give permission, upon proper request, to a setting aside of the stipulation. █ Such action on the part of the trial court should normally be preceded by a motion to set aside the stipulation and a statement of the grounds supporting such an order; a court should not set aside a stipulation regularly made except after a clear showing of error or unfairness. (46 Cal.Jur.2d, Stipulations, § 18, pp. 43-47.) This method of attacking the stipulation was not resorted to by appellant.

In a proper case, a trial court has the power to set aside a stipulation and to permit other evidence on the issues which

were dealt with in it. The applicable general rule is thus set forth in 83 Corpus Juris Secundum, Stipulations, section 35 (2), pages 91-92: "Courts may set aside stipulations where a mistake of fact is clearly shown, on such terms as will meet the justice of the particular case; but in order to warrant relief the mistake must be of a material character, such as will change the legal rights of the parties, and the mistake must be one which could not have been avoided by the exercise of ordinary care."

 It appears, however, in this case that what the appellant sought to prove was that he did not know exactly what the assets of the corporation were at the time of the stipulation. His counsel made an offer of proof as follows:

"Mr. Ashfield: This witness will testify that he did not know anything about a corporation; he was not aware of what the books disclosed or what the books would disclose other than what he had been told by Mr. MacNulty through Mr. Bruner.

"That would be my offer. In other words, if there is a contract—which I don't admit—then my man is not held responsible. My client is not responsible because of mistake on his part. He was not aware of the terms of the amount of money, for example, in the corporation. All he had to rely on was what was told to him by the other side; therefore, it could be conceivably a mutual mistake.

"The Court: The offer is rejected."

Thus, the plaintiff was attempting to retreat from the effect of the stipulation, which, through his counsel he had voluntarily made in open court. When there is no mistake but merely a lack of full knowledge of the facts, which, as here, is due to the failure of a party to exercise due diligence to ascertain them, there is no proper ground for relief. (*DiDonato* v. *Rosenberg*, 230 App.Div. 538 [245 N.Y.S. 675]; 83 C.J.S., Stipulations, § 35, p. 91.)

 Although an attorney who stipulates for a judgment in open court is presumed to have the right to do so (*Security Loan & Trust Co.* v. *Estudillo*, 134 Cal. 166 [66 P. 257]; *Strand Improvement Co.* v. *City of Long Beach*, 173 Cal. 765 [161 P. 975]), the appellant complains that there was no proof that his counsel had the necessary authority; he asserts that there was a failure to show exact compliance with section 283 of the Code of Civil Procedure, in that the stipulation was not in writing, prepared outside of court and signed by the respective attorneys, and that the minutes of the court did not

contain an exact articulation of the details of all of the matters covered.

Under the authorities, this contention is without sanction for the several reasons hereinafter stated. As is said in *Continental Building & Loan Assn.* v. *Woolf,* 12 Cal.App. 725, 730 [108 P. 729] : "To give section 283 [Code Civ. Proc.] a literal construction would greatly retard the business of the court and lead to absurd consequences. Every admission, consent or agreement made in the course of the trial would either have to be reduced to writing or filed with the clerk or by the clerk entered in his minutes. It was never intended that the section should receive such a construction."

In *People* v. *White,* 180 Cal.App.2d 99, 103 [4 Cal.Rptr. 261], it is said : "It is clear that a defendant is bound by a stipulation entered into by his attorney in his presence if he makes no protest at the time. (*People* v. *Cohen,* 94 Cal.App.2d 451, 457 [210 P.2d 911].)"

*Cathcart* v. *Gregory,* 45 Cal.App.2d 179, 187-188 [113 P.2d 894], holds : " 'Nothing in Section 283 of the Code of Civil Procedure militates against the binding effect of a stipulation entered into and executed by the parties in open court and duly reported in the proceedings of the trial. . . .

" ' "The evident object of this section [§ 283, Code Civ. Proc.] is that whenever the attorney shall enter into an agreement for the purpose of binding his client, there shall be *such a record thereof as will preclude any question concerning its character or effect, and that the extent of the agreement may be ascertained by the record,* if oral, that it shall be entered in the minutes, and if written, that it shall be filed with the clerk." ' " Stating further concerning the facts in the case above cited : "We believe the facts of the instant case clearly bring it within the rule thus announced. There can be no question that the stipulation was actually entered into by counsel in open court. *There can be no question of its exact terms, character and effect because it was taken down by the reporter who transcribed his notes.*" (Italics added.)

 In the instant case, the following considerations support the judgment : The several parties and their attorneys talked thoroughly concerning a settlement of the case; they had available an accountant who was as familiar as anyone could be with the record of receipts and disbursements of the Spinali Auto Sales, Inc.; they read into the record, in response to the court's question as to whether the parties were ready to agree to a settlement of the case, a specific statement of how the controversy should be concluded; all of the parties were

present at that time and listened to the statement, and no exception was taken by anyone to the terms of the agreement; the clerk made note of the stipulation, although not spreading its contents in detail on the minutes of the court; the official reporter took down the exact agreement as dictated and approved, and later transcribed that portion of the record; there was immediate partial execution of the agreement in that the taking of evidence was ended, one of the two suits was dismissed and the exhibits were returned to the attorneys who had offered them.

There is ample authority in this state to uphold the approval and acceptance by the trial court of the stipulation in question. (*Cathcart* v. *Gregory, supra,* 45 Cal.App.2d 179, 186-188; *Brooms* v. *Brooms,* 151 Cal.App.2d 351 [311 P.2d 567] ; *Sorensen* v. *Lascy,* 42 Cal.App.2d 606, 608-609 [109 P.2d 713].)

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.